IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Christine Chapin,                    :
                    Plaintiff              Civil Action 2:11-cv-0069
                                     :
        v.                                 Judge Marbley
                                     :
Michael J. Astrue,                         Magistrate Judge Abel
Commissioner of Social Security,     :
                    Defendant
                                     :

**REPORT AND RECOMMENDATION**

Plaintiff Christine Chapin brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

her application for Social Security Disability Insurance Benefits.  This matter is before

the Magistrate Judge for a report and recommendation on the parties' cross-motions for

summary judgment.

**Summary of Issues.** Plaintiff maintains that she became disabled on June 1, 2004,

at age 39, due to 3 ruptured disk in her lower back and degenerative disk disease.  (*Page

ID*## 159, 188.)

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The administrative law judge erred in evaluating the opinion of plaintiff's treating physician.

- The administrative law judge erred at Step 5 of the sequential process.

**Procedural History.**  Plaintiff Chapin protectively filed her application for disability insurance benefits on July 26, 2006, alleging that she been disabled since June 1, 2004.  (*Page ID*## 159-63.)  The application was denied initially and upon reconsideration.  (*Page ID*## 114-23.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (*Page ID*# 124.)  On January 13, 2009, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (*Page ID*## 65-87.)  Plaintiff's husband, Matthew Chapin and a vocational expert also testified.  (*Page ID*## 87-90, 90-111.)  On March 23, 2009, the administrative law judge issued a decision finding that Chapin was not disabled within the meaning of the Act.  (*Page ID*## 53–61.)  On November 18, 2010, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*Page ID*## 42-45.)

**Age, Education, and Work Experience.** Plaintiff Chapin was born in 1965 and was 39 years old on the alleged disability onset date.  (*Page ID*## 159, 183.)  She earned her GED (General Equivalency Diploma) in 1986.  (*Page ID*# 193.)  She has past relevant work experience as a fast food worker, production worker in a factory, receptionists and seamstress in an automobile assembly plant.  (*Page ID*# 189, 223.)

**Plaintiff's Testimony.** The administrative law judge summarized Chapin's testimony, as well as the lay witness testimony, as follows:

> The claimant testified at the hearing that she is married and lives with her husband.  They live in a manufactured home (16 feet by 80 feet).  She experiences lower back pain and is unable to concentrate and as a result

2

she cannot work. She manages her pain by lying down and trying not to overexert herself She elevates her feet which helps to relieve her pain. She also takes Tylenol and Aleve. She has not had any medical treatment since 2002 with Dr. Rahn. She states that since then her condition has gotten a lot worse. When her condition first started it affected only the left side. It now affects both the left and right sides from the waist down. She estimates she can sit for one-half hour to 45 minutes and then has to stand. She can stand for 10 to 15 minutes and then experiences shooting pains through both legs and her legs start shaking. She can walk 10 to 15 minutes. She can lift about 10 to IS pounds, but cannot squat to pick up objects from the floor. She does cooking and housework, but her husband sweeps the floors and runs the vacuum. He carries the laundry to the laundry room. She accompanies her husband grocery shopping if she feels up to it. She drives about once a week. She wakes up in pain two to three times at night. Sometimes she can get back to sleep and other times she just lays there. She does not feel refreshed in the morning. She has been married three years and indicates her husband's insurance will not cover her pre-existing condition. She did not apply for Medicaid before she was married. She estimates she has two good days per week and four to five bad days. On a good day, she does extra things that need to be done. On a bad day, she sits down, takes breaks, and goes back to bed.

Matthew Chapin, the claimant's husband, also testified at the hearing and corroborated the testimony of the claimant.

(*PageID*# 59.)

**Vocational Expert's Testimony.** The administrative law judge asked the

vocational expert to consider an individual with plaintiff's vocational characteristics

who was capable of the following: occasional squatting, but only for three to five

minutes in duration; occasional climbing of ladders and stairs for five minutes at a time;

occasional bending, twisting or stretching for five minutes at a time; occasional lifting

eight pounds from the floor to the waist; occasional lifting 13 pounds from the waist to

shoulder and above the shoulder, but the 13 pounds above the shoulder should be for

no more than 10 minutes at a time; occasional carrying 13 pounds for five minutes at a time; occasional pushing 20 pounds; occasional pulling 10 pounds; sitting for no more than 30 minutes at a time; standing for no more than 10 minutes at a time; and walking no more than five minutes at a time.  (*PageID*## 105-06.)

The vocational expert initially testified that no jobs would be available.  (*PageID*# 106.)  The vocational expert misconstrued the time limitations to mean that, after sitting for 30 minutes, the person would be off-task and leave her work station.  (*PageID*## 106-09.)  The administrative law judge then clarified that the hypothetical person would continue to perform her work duties while changing her position.  The vocational expert testified that the person could perform the jobs of waxer, table worker, and food and beverage order clerk.  (*PageID*# 109.)

The vocational expert acknowledged that the alternate sit/stand option would be inconsistent with the *Dictionary of Occupational Titles* ("DOT"), but he explained that university studies by the rehabilitation department at the University of Texas at PanAmerica indicated that such jobs could be performed sitting or standing.  (*PageID*# 110.)  The vocational expert testified that he had personally observed the jobs of order clerk, waxer, and table worker, and based on his observation, these jobs could be performed by someone who required a sit-stand option.  *Id.*  The vocational expert testified that the results were published and the administrative law judge reiterated that the research had been posted publicly.  (*PageID*# 111.)

**Medical Evidence of Record.**  The relevant medical evidence of record is summarized as follows:

Boris Terebuh, M.D.  On July 19, 2001, Chapin was evaluated by Dr. Terebuh, a specialist in physical medicine and rehabilitation, to treat her lumbar and left gluteal symptoms, as well as bilateral lower limb symptoms which have been present since a work related injury on January 4, 2001.  Chapin reported sensations that her legs were weak and trembling when standing and walking.  She described her pain as a 6 on a analog pain scale and noted it occurred continuously.  Her medications included Darvocet and Excedrin, but she had not taken any since June.  She used muscle relaxers on an as needed basis.  She returned to work in an unrestricted capacity on April 23, 2001, but was laid off in late May 2001.  Examination demonstrated painful trunk extension, markedly positive straight leg raise on the left and mildly positive on the right, tenderness to palpitation over the left sacroiliac joint and lumbar spine, and normal neurologic testing.  Dr. Terebuh felt that Chapin's overall presentation was consistent with radicular pain in the lower limbs, with a component of sacroiliac joint pain.  Dr. Terebuh recommended a caudal epidural injection, prescribed Celebrex and placed Chapin on temporary work restrictions of lifting no greater than 25 pounds.  (*PageID*## 328-33.)  Dr. Terebuh reported on a workers' compensation form that Chapin could return to work, but was limited to lifting 11 to 25 pounds.  (*PageID*# 334.)

5

_Patrick Boylan, M.D._  On August 3, 2001,  Chapin underwent a caudal epidural steroid injection for her back and bilateral lower limb radicular symptoms.  (_PageID_## 324-26.)  On August 13, 2001, she complained of no relief from the epidural injection, dribbling with urination, and pain in her low back, left buttock and left thigh. Examination revealed pain upon returning to neutral from a forward flexion of 60 degrees, mild tenderness of lower paraspinal muscles, diffuse exquisite tenderness into the left gluteal region, reflexes of two out of four at knees and one out of four at ankles. Dr. Boylan diagnosed low back pain, lumbar radiculopathy, and possible lumbar spondylolysis.  (_PageID_# 323.)

A lumbar spine MRI taken on September 10, 2001, showed evidence of degenerative disc disease with a small left-far-lateral disc protrusion at L3-L4 and a small central and left paracentral disc protrusion at L4-L5, but no stenosis.  (_PageID_# 321.)  That same day, Chapin underwent an electromyographic examination of her left lower extremity which was suggestive of L4 radiculopathy.  (_PageID_## 316-19.)

When seen by Dr. Boylan on October 29, 2001, Chapin reported that she had been through six sessions of therapy and had a significant reduction in her discomfort.  She no longer had the pain into the thigh on the left side.  She still had some mild discomfort in the back and toward the inguinal region on the left.  She felt the therapy had been quite helpful.  She also reported doing her home exercise  On examination Chapin had no difficulty arising from the examining table.  Her gait was not antalgic. She had full range of motion in flexion and extension without pain.  No reproducible

6

paraspinal tenderness.  No pain with internal and external rotation of the hips.  Reflexes and strength are normal.  Femoral stretch test, as well as slump test is negative for pain into the leg.  Dr. Boylan diagnosed resolving lumbar radiculitis.  Dr. Boylan noted that Chapin's therapist felt that several more sessions would be helpful to progress with her stabilization program.  "We will get her back in for another three or four sessions as this seems to be the only thing that has really provided her with any improvement in her symptoms."  Dr. Boylan restricted Chapin to no lifting more than ten pounds frequently and 25 pounds occasionally.  She can do occasional twisting, bending, pushing and pulling.  (*PageID* # 313.)

On November 19, 2001, Dr. Boylan noted Chapin's continued improvement and that her prior complaint of pain shooting down into her leg had resolved.  She exhibited good lumbar range of motion, no discomfort with rotation of her hips, no problems rising from a squatted position, and normal reflexes and strength in her legs.  Dr. Boylan assessed that Chapin's lumbar radiculopathy was resolving.  He advised Chapin to continue her home exercise program and take Ibuprofen.  (*PageID* # 310.)  Dr. Boylan indicated she could return to full work without any restrictions.  (*PageID* # 311.)

On January 7, 2002, Chapin complained that her symptoms had worsened, she had pain in the back, buttock, and rather diffusely into her leg.  She also reported episodes of her entire left leg going numb.  Examination demonstrated difficulty arising from her chair and pain with lumbar range of motion.  She was diagnosed with low back pain and intermittent lumbar radiculopathy.  Dr. Boylan recommended a lumbar

7

discogram at L3-L4, L4-L5, and L5-S1 to discern whether or not these discs were the source of her chronic pain.  Since Ibuprofen was bothering Chapin's stomach, Dr. Boylan prescribed Vioxx.  (*PageID*## 307-08.)  Dr. Boylan indicated that Chapin could return to work immediately with regular duties.  (*PageID*# 309.)

Chapin underwent an L3-S1 provocative diagnostic discography on January 23, 2002.  Chapin reported that she had taken Vioxx recently, but currently was not on any medications.  Testing was positive at L3-4 with high levels of low back and hip pain reported, negative at L4-5, and positive at L5-S1 again with very high levels of pain in the back and hip reported.  (*PageID*## 303-06.)

Following the lumbar discogram, Dr. Boylan saw Chapin on January 28, 2002 to discuss treatment options.  Dr. Boylan discussed the possibility of a four-level fusion surgery but cautioned against it because of  Chapin's age.  He also discussed, and recommended a two level IDET (intradiscal electrothermal therapy).  Dr. Boylan kept Chapin's restrictions to lifting 10 pounds frequently and 25 pounds occasionally, and refilled her Vioxx prescription.  (*PageID*## 301-02.)

RediMed Physical therapy Chapin participated in six sessions of physical therapy from October 15, 2001 through October 26, 2001.  Chapin reported that her symptoms had "improved by at least 60%."  She demonstrated full flexion, extension, and side gliding on the right and left, without low back, left hip, or thigh pain, and straight-leg raising was negative.  (*PageID*# 314.)

By November 16, 2001, Chapin had participated in 12 sessions of physical therapy.  Her physical therapist, Andreas Lohmar, P.T.,  noted that Chapin was able to tolerate all therapeutic exercises and work simulation activities without leg pain.  Ms. Lohmar felt it was appropriate for Chapin to return to her previous job and scheduled no further formal physical therapy.  (*PageID*# 312.)

<u>Kevin Rahn, M.D.</u>  On March 28, 2002, Chapin was seen by orthopedist, Dr. Rahn for a second opinion and consultation regarding her complaints of low back pain and left leg pain.  (*PageID*# 354-57.)  Chapin completed a questionnaire in which she described her back pain as a 6 to 8 on a visual analog pain scale.  She could walk less than one block, she experienced dribbling after urination, was limited with respect to lifting or carrying groceries and climbing stairs.  She reported that she was never totally comfortable but that constantly moving made her pain better, and that none of her treatment (physical therapy, heat/ice, exercises, epidural injections, and pain medication) had been helpful.  (*PageID*## 358-68.)  Upon examination, Chapin was neurologically intact; range of motion was relatively normal in her back and hips; and no paraspinal muscle spasm was apparent.  Straight leg raising was negative bilaterally. (*PageID*# 355.)  Dr. Rahn found that it was unusual to have a discogram positive at L3-4 and L5-S1 and to be negative at L4-5.  He noted he was not sure how much the IDET procedure would help given those facts, but felt it was a reasonable option.  He further voiced concern that Chapin may have a pars defect and that it was contributing to her pain.  (*PageID*## 355-56.)

9

A helical CT scan of the lumbar spine with multiplanar reconstruction displays of April 1, 2002 showed no pars interarticularis or other defect, mild osteoarthritis of the lumbosacral facet joints, most pronounced on the right side, with some minimal fragmentation of or dystrophic ossification along the lower edge of that facet joint.  The radiologist noted this was contralateral to Chapin's symptoms.  (*PageID* # 352.)

On April 8, 2002, Dr. Rahn explained that the cause of Chapin's pain was likely myofascial as well as some degenerative disc disease, but he recommended a repeat discogram to better evaluate her state as he thought it was unusual for L4-5 to be negative for discogenic pain when the surrounding levels were positive.  (*PageID* # 348-49.)

Chapin underwent a second discogram at L3-4, L4-5, and L5-S1 on May 23, 2002 which showed provocation at all three levels with annular tears at L3-4 and L4-5 discs and gross internal disruption of L5-S1.  (*PageID* # 343-46.)  When seen by Dr. Rahn on May 28, 2002, he opined that since the results were different from her prior discogram, Chapin would not be a candidate for IDET.  Dr. Rahn referred Chapin for a Functional Capacity Evaluation.  (*PageID* # 338.)

On June 20, 2002, Dr. Rahn opined that Chapin had reached maximal medical improvement and recommended that she return for care on an as-needed basis.  He indicated that she could return to work with permanent work restrictions, as described in the June 2002 functional capacity evaluation.  (*PageID* ## 335-37.)

<u>Functional Capacity Evaluation.</u>  On June 11, 2002,  Chapin underwent a Functional Capacity Evaluation performed by physical therapist, Joe Simpao. (*PageID*## 268-96.)  During the evaluation, Chapin could: lift from floor to waist up to eight pounds on an occasional basis, lift waist to shoulder up to thirteen pounds on an occasional basis, lift shoulder to overhead up to thirteen pounds on an occasional basis, carry up to thirteen pounds on an occasional basis, push up to twenty pounds on an occasional basis, pull up to ten pounds on an occasional basis, sit for 1/3 to 2/3 of the day for no more than thirty minutes in duration, stand for 1/3 of the day for no more than 10 minutes in duration, walk for 1/3 of the day for no more than five minutes in duration, use stairs/ladders up to 1/3 of the day for no more than five minutes in duration, bend/stoop for up to 1/3 of the day for no more than five minutes duration, crouch/squat for up to 1/3 of the day for no more than 3-5 minutes in duration, do above-shoulder work for up to 1/3 of the day for no more than ten minutes duration, do low level work for up to 1/3 of the day for no more than five minutes duration, and grasp between 1/3 and 2/3 of the day.  (*PageID*## 270-71.)

Mr. Simpao concluded that Chapin was capable of sitting on a frequent basis; standing on an occasional basis; and walking on an occasional basis.  (*PageID*## 271-72.) Mr. Simpao found Chapin capable of lifting, pulling, and carrying at a sedentary physical demand level and pushing at a light physical demand level.  (*PageID*# 269.) Chapin's ability to engage in bending/stooping, crouching/squatting, and low-level work should be limited to an occasional basis.  *Id.*

11

In a summary of reliability of client reports, Mr. Simpao noted that Chapin's perception of pain was at times inappropriate.  (*PageID*# 269.)  Chapin presented with three of seven inappropriate (anatomically unreasonable) responses to the Waddell Inappropriate Symptoms Questionnaire, which was "suggestive of inappropriate illness behavior," occasional inconsistency with pain ratings, and positive placebo tests. (*PageID*## 291, 294.)  Chapin's subjective pain rating during administration of sitting tests was higher than her observed behavior.  (*PageID*## 293-94.)  However, Mr. Simpao concluded that overall inconsistencies were considered minor as Chapin's subjective reports generally matched well with distraction-based clinical observations.  (*PageID*# 269.)

Prema Menon, M.D.  Consulting physician, Dr. Menon examined Chapin on September 23, 2006 at the request of the Bureau of Disability Determination.  (*PageID*## 253-56.)  Chapin reported to Dr. Menon that since injuring her back in a work related accident six years prior, her pain was so severe that she experienced what she described as mild seizures.  She experienced severe twitching in her limbs and would pass out. She stated she now was having pain on the right side as well.  Her only current medication was Tylenol.  (*PageID*# 253.)  She further stated that she has difficulty moving her bowels due to back pain.  *Id.*  Chapin's gait was antalgic without use of an assistive device; she was able to walk in tandem, but was unable to stand on heels or toes; and she was able to squat.  Straightleg raising was positive on the left side and could not be assessed on the right side due to pain complaints.  (*PageID*# 254.)  She

12

developed muscle spasm after forward flexion was accomplished to 45°.  (*PageID*# 255.)
Muscle strength and tone was 5/5 in the upper extremities and 4/5 in the lower
extremities.  Deep tendon reflexes were intact and equal, and no sensory deficits were
appreciated.  (*PageID*# 254.)

Antoinette Dobson, M.D./Fernando Montoya, M.D.  In November 2006, state
agency reviewing physician, Dr. Dobson, opined that Chapin could lift 20 pounds
occasionally and 10 pounds frequently, stand and/or walk for a total of about six hours
in an eight-hour work day, sit for a total of about six hours in an eight-hour work day,
and occasionally perform postural activities except climbing ladders, ropes, or scaffolds,
which she should never do.  (*PageID*## 114, 259-66.)  After reviewing the medical
evidence in April 2007, Dr. Montoya affirmed Dr. Dobson's assessment.  (*PageID*## 115,
267.)

**Administrative Law Judge's Findings.**  The administrative law judge found
that:

1.    The claimant last met the insured status requirements of the Social
      Security Act on June 20, 2007.

2.    The claimant did not engage in substantial gainful activity during the
      period from her alleged onset date of June 1, 2004 through her date last
      insured of June 20, 2007.

3.    Through the date last insured, the claimant has had the following severe
      impairment: degenerative disc disease and chronic back pain.

4.    Through the date last insured, the claimant does not have an impairment
      or combination of impairments that meets or medically equals one of the
      listed impairments in 20 CFR part 404, subpart P, Appendix 1.

13

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform the full range of light work defined in 20 CFR 404.1567(b).

6.    Through the date last insured, the claimant was capable of performing past relevant work as a seamstress and fast food worker.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.    The claimant was not under a disability, as defined in the Social Security Act, at any time from June 1, 2004, the alleged onset date, through June 30, 2007, the date last insured.

(*Page ID*## 55-61.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "more than a mere scintilla." *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "take into account whatever in the record fairly detracts from its weight." *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff contends that the administrative law judge erred by crediting the opinions of the state agency physicians, Drs. Dobson and Montoya, over the opinions of her treating physician, Dr. Rahn.  She emphasizes that Drs. Dobson and Montoya never saw or treated Chapin and they reviewed the record without the benefit of Dr. Rahn's June 2002 opinion and his medical records from March through June 2002.  She also emphasizes that the administrative law judge erred as a matter of law because the administrative law judge's analysis does not account for the clarification or worsening of Chapin's condition, which Plaintiff argues is documented in the record.

Plaintiff next agues that the administrative law judge erred at Step 5 of the sequential process.  According to Chapin, the administrative law judge attempted to rely upon vocational expert testimony to meet the Commissioner's burden, but a legally insufficient hypothetical question cannot result in according substantial weight to the vocational expert's testimony.

**Analysis.**

**The administrative law judge's rejection of treating physician's opinion**

In his opinion, the administrative law judge found:

The opinions from Dr. Rahn of June 20, 2002, concerning claimant's remaining work capacities are given less weight as he did not address the at times inappropriate perception of pain displayed by the claimant (noted in the FCE).  Dr. Boylan was involved in claimant's care over a longer period of time than Dr. Rahn.  Treatment records from Dr. Boylan

15

> mentioned that claimant's symptoms had improved by at least 60% following intensive physical therapy.  Claimant related to Dr. Rahn that physical therapy was of no help.  The undersigned assigns greater weight to opinions expressed by Dr. Boylan concerning claimant's capacities.

(*PageID*# 60, citation to record omitted.)

Social Security Regulations and case law require administrative law judges to apply controlling weight to a treating medical source's opinion when it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record.  *See* 20 C.F.R. §404.1527(d)(2); *see also Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 660 (6th Cir. 2009); *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If a treating medical source's opinion is not entitled to controlling weight, it must be weighed under "a host of other factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242.

The administrative law judge holds the responsibility to weigh the record evidence – including medical source opinions – and to determine whether Plaintiff was under a "disability." *See* 20 U.S.C. §404.1527(e).  The administrative law judge's decision in Chapin's case reveals that he weighed the medical source opinions and other evidence of record under the required legal criteria and reasonably concluded that Chapin was not under a "disability" as defined by the Social Security Act.  For example,

the administrative law judge considered and rejected Dr. Rahn's opinion, the medical source opinion most favorable to Chapin, under the correct legal criteria. Recalling that Dr. Rahn thought that Chapin had reached maximal medical improvement and had a permanent partial impairment rating of 5%[1], the administrative law judge rejected those conclusions because Dr. Rahn did not support his opinions with objective medical evidence and because the record lacks evidence supporting his conclusions. *See* 20 C.F.R. §404.1527(d)(2)-(4). A review of Dr. Rahn's opinions confirms the reasonableness of the administrative law judge's decision because Dr. Rahn did not explain his opinions in any meaningful detail. Substantial evidence therefore supports the administrative law judge's reasons for not fully crediting Dr. Rahn's opinions.

Plaintiff also argues that the administrative law judge improperly assigned "greater weight" to the opinion of a physical therapist than to Dr. Rahn. *See* Doc. #18 at 14. A review of the administrative law judge's decision does not show that the administrative law judge gave greater weight to the physical therapist *over* Dr. Rahn. The administrative law judge noted, "In accordance with 06-03p, the undersigned assigns greater weight to opinions offered by the physical therapist who conducted 12 treatment sessions with the claimant in October 2001 and November 2001, rather than

---

[1]It should be noted that Dr. Rahn evaluated and treated Plaintiff during the pendency of her Workers' Compensation claim. The Court notes that disability standards under the Social Security Act differ significantly from those applicable under various state's Workers' Compensation laws. *Crowe v. Comm'r of Soc. Sec.*, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (citing *Gray v. Chater*, 903 F.Supp. 293, 301 n. 8 (N.D.N.Y.1995) ("Workers' compensation determinators are directed to the workers' prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act.").

the physical therapist who conducted the functional capacity evaluation on June 11, 2002 and had no further contact with the claimant." *See PageID* # 60. As the Commissioner argues, Dr. Rahn needed a functional capacity assessment to assess Chapin's limitations (*PageID* # 338) and he acknowledged that his opinion regarding Chapin's limitations was "based on the functional capacity evaluation placed in the chart." (*PageID* # 335.)  *See* Doc. # 23 at 12.  The Court agrees that a comparison between the physical therapists' assessments was entirely appropriate in order to properly assess Dr. Rahn's opinion.

In addition, based on the administrative law judge's consideration of the record evidence as a whole, he reasonably concluded that Chapin was capable of performing the full range of light work activities consistent with the limitations in the opinions provided by Drs. Dobson, Montoya and Boylan.  (*PageID* ## 259-66, 267, 301-02, 309, 311, 313.)  The administrative law judge reasonably relied on these medical source opinions as he believed their opinions best reflected an evaluation of the record evidence as a whole and accounted for Chapin's credible limitations.  (*PageID* ## 59-60.) Indeed, the administrative law judge considered that Dr. Dobson found Chapin to be "partially credible but not to the extent of severity alleged based on clinical findings." (*PageID* # 264.)  The administrative law judge also considered, in arriving at the conclusion that Chapin could perform a light work that it was noted that claimant's perception of pain was at times inappropriate.  (*PageID* ## 293-94.)  According to the administrative law judge:

> The medical record does not establish the alleged worsening in her condition, nor pain precipitating passing out or seizure activity as she related to the consultative physician on September 23, 2006.  The medical record fails to establish the alleged need to lie down or to elevate her feet an inordinate amount of time during the day.  She does not require an ambulatory assistive device.  The claimant is able to care for her personal needs and she performs household chores with assistance.  She is able to drive and at times accompanies her husband grocery shopping.  She did try working for a couple of months in 2004 and it was partly the lifting of bulky packages weighing as much as 40 to 50 pounds that led to her discharge.  Physical examination reveals claimant to be alert and oriented to time, place, and person.

(*PageID* # 59, citation to record omitted.)  This evidence tends to diminish the accuracy of Plaintiff's allegations of disabling pain, and the administrative law judge properly considered it.

Moreover, the administrative law judge further considered Chapin's treatment history, and noted that she has had no treatment and has not required prescription medications for pain relief since 2002.  (*PageID* # 59.)  Chapin reported that she only took Tylenol for pain or no medication at all.  (*PageID* ## 253, 303, 328.)   In addition, the administrative law judge noted that Chapin was not a surgical candidate.  (*PageID* # 59.)  The administrative law judge observed:  "After a course of physical therapy in late 2001, claimant was able to tolerate all therapeutic exercises and work simulation activities without provocation of leg pain.  She reported that her symptoms had improved by at least 60%.  It was felt appropriate for the claimant to be returned to her previous job.  No further formal physical therapy had been scheduled."  *Id.*  Her lack of significant treatment during that time was a proper consideration under the Regulations in his

evaluation of Chapin's credibility.  *See* 20 C.F.R. §404.1529(c)(v), (vi) (treatment and other measures to relief symptoms considered in evaluating credibility); *See also* Social Security Ruling 96-7p, 1996 WL 374186 (claimant is less credible if level of treatment is inconsistent with level of complaints).

Plaintiff also argues that the opinions of the state agency reviewers should be given less weight because these physicians never examined Chapin.  The opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight.  This occurs because the Commissioner views non-examiners "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p.  Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization.  *See* 20 C.F.R. §404.1527(d), (f); *See* also Ruling 96-6p at *2-*3.

The record contained treatment notes and three medical opinions, which the administrative law judge considered.  The record also contains assessments from Drs. Dobson and Montoya, who reviewed the record and opined that Chapin was able to work with light exertional restrictions.  The evidence was sufficient to support the administrative law judge's decision that Chapin was not under a disability.

**Step 5 of the Sequential Process and Vocational Expert testimony**

Chapin contends in her second Statement of Error, "a legally insufficient

20

hypothetical question cannot result in according substantial weight to the vocational expert''s testimony."  (Doc. #18 at 16).  Plaintiff reasons that the administrative law judge has mistakenly taken the position that even if she were to give more weight to the opinion of Dr. Rahn, Chapin could still perform the other jobs of blending tank operator, furniture rental consultant, and thermal surfacing machine worker.  Plaintiff argues that these jobs were cited by the vocational expert in response to limitations of the FCE, not based upon the limitations identified in Dr. Rahn's opinions.

A proper hypothetical question accurately describes the claimant "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant."  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *See Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).  "[T]he administrative law judge is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

A review of the administrative law judge's hypothetical questions reveal that he asked the vocational expert to consider the jobs available to a person with her age, education, work history, and residual functional capacity.  *See PageID##* 105-06.  The limitations asked in the hypothetical question model the limitations in Dr. Rahn's assessment.  *See PageID#* 377.  Because the administrative law judge did not err in discounting Dr.  Rahn's opinion or in assessing plaintiff's residual functional capacity, the vocational expert's testimony addressing a hypothetical person with these

limitations and abilities, which incorporated the administrative law judge's residual functional capacity, constituted substantial evidence to support the administrative law judge's conclusion at step 5 of the sequential analysis. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (citing *Varley*, 820 F.2d at 779. ("Substantial evidence may be produced through reliance on the testimony of a vocational expert....")).

In addition, Chapin contends that the administrative law judge's back-up argument does not accurately account for the vocational expert's testimony, and her attorney was not provided with the vocational expert's report. Chapin was represented at the hearing, and her counsel was afforded a full opportunity to cross-examine the vocational expert. The administrative law judge reiterated that the university studies from the University of Texas at PanAmerica had been posted publicly "within the last year" on the boards that Social Security practitioners follow. (*PageID* # 111.) The administrative law judge had no duty under S.S.R. 00-4p to interrogate the vocational expert further. *See Martin v. Comm'r of Soc. Sec.*, 170 Fed.Appx. 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00-4p places an affirmative duty on the administrative law judge to conduct an independent investigation into the testimony of witnesses to determine if they are correct.").

In addition, social security regulations do not require the Commissioner or the vocational expert to rely on classifications in the DOT. Therefore, an administrative law judge may rely on the vocational expert's testimony even if it is inconsistent with the DOT. *Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir.1995).

In the specific context of this case, the Court finds that if a remand were ordered, the result would not change.  Even if the administrative law judge gave significant weight to the opinion of Dr. Rahn, Chapin could still perform the job of blending tank operator, furniture rental consultant and thermal surfacing machine worker, which are within the residual functional capacity limitations assessed by Dr. Rahn.  (*PageID# 61.*)

Given Plaintiff has not shown error in the administrative law judge's assessment of her residual functional capacity, she, therefore, has not demonstrated any error in the administrative law judge's hypothetical questions or the vocational expert's testimony.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. r. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District

Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R. Abel
United States Magistrate Judge